COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH

NO. 
2-02-249-CV
 
QUICKSILVER RESOURCES, INC.                                             APPELLANT 
 
V.
 
RELIANT ENERGY SERVICES, INC.                                           APPELLEES 
AND RELIANT ENERGY RESOURCES, INC.                                                  
 
------------
 
FROM THE 
352ND DISTRICT COURT OF TARRANT COUNTY 
 
------------
 
MEMORANDUM OPINION



 
------------
        This case involves a dispute over a contract for the sale of natural gas. 
Appellant Quicksilver Resources, Inc. (“Quicksilver”) filed a suit for breach of 
contract against Reliant Energy Services, Inc. and Reliant Energy Resources, 
Inc. (collectively “RES”), alleging that RES had breached a provision of the 
contract requiring the parties to share profits when the gas is sold for an 
amount in excess of the contract price. RES moved for summary judgment on 
the ground that the provision was not mandatory. The trial court granted RES 
summary judgment, and Quicksilver brought this appeal. We affirm the trial 
court’s judgment. 
I. FACTUAL SUMMARY
        On May 11, 1999, Quicksilver contracted with RES for the sale of natural 
gas at a fixed price over a ten-year period. The contract consisted of a “Master 
Gas Purchase and Sale Agreement” that set out the general terms of the 
parties’ agreement and two one-page “Transaction Confirmation” sheets that 
stated the volume and fixed price of the gas to be purchased. The agreed upon 
minimum price was $2.49 per mmbtu. The parties considered the agreement 
and the confirmation sheets to be one agreement. 
        This lawsuit revolves around the interpretation of the duties, if any, 
created by a “Special Provision” in the confirmation sheets. The Special 
Provision provides: 
From time to time, RES or Quicksilver may encounter
opportunities for optimizing the value of this Gas
supply. In those events, either party may propose a
50-50 profit sharing arrangement with the other party.
Pursuant to such transactions, the parties may obtain
incremental transportation to capture these
opportunities, in which event the profits to be shared
would take into account all costs and expenses
associated with each transaction. [Emphasis added.]
 
        Until July 2000, RES shared with Quicksilver the profits realized from 
various opportunities to maximize the value of the gas, resulting in payments 
to Quicksilver of approximately $2,000,000. During late 2000 and early 2001, 
however, gas prices started to rise and peaked at over $10 per mmbtu, and 
according to Quicksilver, RES no longer discussed profit sharing opportunities 
with Quicksilver. When Quicksilver made inquiries regarding price opportunities 
to optimize the gas, RES responded “we will work on it,” but did not answer 
the requests or provide any information. Quicksilver subsequently filed this suit 
seeking to enforce the profit sharing language in the Special Provision. 
II. LEGAL ANALYSIS
        In three issues, Quicksilver argues that the trial court erred in granting 
RES summary judgment because (1) Quicksilver established that RES did not 
perform its contractual obligations in good faith, (2) the parties’ course of 
performance illustrates that the Special Provision should be interpreted as 
requiring equal profit sharing, and (3) RES did not move for summary judgment 
on all of Quicksilver’s claims. 
A. Standard of Review
        In a summary judgment case, the issue on appeal is whether the movant 
met its summary judgment burden by establishing that no genuine issue of 
material fact exists and that the movant is entitled to judgment as a matter of 
law.
 

 The burden of proof is on the movant, and all doubts about the existence 
of a genuine issue of material fact are resolved against the movant.
 

 Therefore, 
we must view the evidence and its reasonable inferences in the light most
favorable to the nonmovant.
 


        In deciding whether there is a material fact issue precluding summary 
judgment, all conflicts in the evidence are disregarded and the evidence 
favorable to the nonmovant is accepted as true. 
 

 Evidence that favors the 
movant's position will not be considered unless it is uncontroverted.
 

 The 
summary judgment will be affirmed only if the record establishes that the
movant has conclusively proved all essential elements of the movant's cause
of action or defense as a matter of law.
 


        A defendant is entitled to summary judgment if the summary judgment 
evidence establishes, as a matter of law, that at least one element of a 
plaintiff’s cause of action cannot be established. 
 

 The defendant as movant 
must present summary judgment evidence that negates an element of the
plaintiff’s claim.
 

 Once the defendant produces sufficient evidence to establish 
the right to summary judgment, the burden shifts to the plaintiff to come
forward with competent controverting evidence raising a genuine issue of
material fact with regard to the element challenged by the defendant.
 

 
Questions of law are appropriate matters for summary judgment.
 


B. Contract Interpretation
        In its first and second issues, Quicksilver argues that the trial court erred 
in granting RES summary judgment because the evidence proves that RES failed 
to comply with the Special Provision and the parties’ course of performance 
supports Quicksilver’s interpretation that the Special Provision requires a 50/50 
sharing of the profits. Quicksilver contends that the Special Provision contains 
mutual provisions giving each party the right to inquire concerning an 
“optimization opportunity,” which is an opportunity to maximize the value of 
the gas, and obligations to respond to each other’s inquiries. Quicksilver argues 
that the Special Provision also contains an implied obligation requiring RES to 
respond to Quicksilver’s optimization inquiries in good faith because each party 
has the right to learn of opportunities discovered or created by the other and to 
propose a profit sharing arrangement. We disagree. 
        Quicksilver correctly states that every clause in a contract should be 
construed so that every word is given meaning. 
 

 We are also required to give 
every word its plain meaning unless otherwise directed by the contract.
 

 
Neither party pled or argued below that the contract was ambiguous.
 

 
Accordingly, we construe the contract as a question of law,
 

 and it is our 
“duty to give the words used their plain meaning.”
 


        Quicksilver’s arguments are, however, attenuated at best. The Special 
Provision states that the parties “may encounter” various opportunities. When 
such opportunities are encountered, either Quicksilver or RES “may propose” 
a profit sharing arrangement. Not only does the Special Provision use the word 
“may,” but it also uses the word “propose” to describe the parties’ agreement. 
“May” is a discretionary term, 
 

 and “propose” means “to put forth for 
consideration [or] approval.”
 

 Giving these terms their plain meaning, we hold 
as a matter of law that the Special Provision is discretionary, not mandatory.
 


        Quicksilver argues that the Special Provision should be interpreted to 
mean that if one party asks the other for information about the disposition of 
gas or other market factors, the other party must respond. According to 
Quicksilver, to construe the provision otherwise would render meaningless the 
right to make a proposal when the other party encounters the opportunity. We 
disagree with this interpretation because the plain meaning of the words used 
in the Special Provision establish that the right to propose is discretionary. 
 


There is no requirement that a proposal be accepted; therefore by implication, 
it could be rejected. Thus, even though Quicksilver repeatedly asked RES about
optimization opportunities, RES was not, under the terms of the Special
Provision, obligated to respond.
        Quicksilver argues that the uniform commercial code provides that 
contract terms can be explained or supplemented by the parties’ course of 
performance
 

 and offers numerous letters, e-mails, and invoices to show that 
the parties’ course of performance under the Special Provision establishes that
the parties intended profit sharing to be mandatory. For example, Quicksilver
argues that a letter from RES to Quicksilver dated March 18, 1999, which
stated, “[RES] ha[s] agreed to share profits for any optimization of this supply,”
shows RES’s intent that the Special Provision require the parties to share
profits. Like the Special Provision, however, the letter states that either party
can propose potential market opportunities for sharing profits. As we have
noted, this language is discretionary.
 


        Quicksilver points out that in another letter dated August 3, 1999, RES 
agreed to share any profits realized if a specific opportunity proved rewarding. 
Quicksilver relies on several other similar letters and e-mails to establish that 
RES agreed to share profits with Quicksilver. Quicksilver argues that RES 
breached the contract when it stopped responding to Quicksilver’s requests for 
information in late 2000 and early 2001. We believe RES’s course of 
performance offering to share profits on some, but not all, opportunities is 
additional evidence indicator that the parties intended the language in the 
Special Provision to be discretionary. 
 

 Further, because RES had no 
contractual duty to accept Quicksilver’s proposal for a continued profit-sharing
arrangement, RES did not breach the contract by ignoring Quicksilver’s
inquiries. That is, its right to review a proposal and deny it. 
        Accordingly, we hold that the Special Provision did not require RES to 
respond to Quicksilver’s requests for optimization of profits from opportunities 
created or discovered by RES and that the parties’ course of performance 
establishes the discretionary nature of the Special Provision. We overrule 
Quicksilver’s first and second issues. 
 
C. Summary Judgment on All of Quicksilver’s Claims 
        Quicksilver argues in its third issue that the trial court erred when it 
rendered summary judgment on all of Quicksilver’s claims because RES’s 
motion for summary judgment failed to address Quicksilver’s estoppel defense. 
Concerning estoppel, Quicksilver pleded that “based upon the course of 
performance by [RES], [RES] is estopped from claiming that the Special 
Provision obligates it to do nothing.” Because Quicksilver’s estoppel defense 
was based on the parties’ course of performance, which we have held 
establishes the discretionary, rather than mandatory, nature of the Special 
Provision, we overrule Quicksilver’s third issue. Quicksilver cannot prevail on 
this defense, and reversal on summary judgment would be meaningless. 
 


 
III. CONCLUSION 
        Having overruled each of Quicksilver’s issues, we affirm the trial court’s 
judgment.
 
                                                                  LEE ANN DAUPHINOT 
                                                                  JUSTICE
 
PANEL B:   CAYCE, C.J.; and DAUPHINOT, J. 
LIVINGSTON, J. recused.
DELIVERED: September 25, 2003